IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON WALTON,<br>on behalf of Plaintiff and the class members described below,<br><br>            Plaintiff,<br><br>      vs.<br><br>UPROVA CREDIT LLC;<br>UPROVA HOLDINGS LLC;<br>UPPER LAKE PROCESSING SERVICES, INC.;<br>POMO ONE MARKETING INC.;<br>HABEMCO LLC;<br>GENEL ILYASOVA;<br>MICHAEL SCOTT HAMMER;<br>DENISE DEHAEMERS;<br>SARAH MARIE HIMMLER;<br>DAVID STOVER;<br>and JOHN DOES 1-20,<br><br>            Defendants. | Case No. 1:23-cv-00520<br><br><br><br><br><br>DEMAND FOR TRIAL BY JURY |

## COMPLAINT – CLASS ACTION

1. Plaintiff, Aaron Walton, brings this acion to secure redress from predatory and unlawful loans (such as Exhibit A). The loans are made through a website, www.uprova.com, nominally operated by Defendant Uprova Credit LLC. Defendants Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC are entities responsible for the operation of the website and the making and collection of the loans. Individuals involved in the actual operation of the lending activities include Genel Ilyasova, Michael Scott Hammer, Sarah Marie Himmler, David Stover and Denise DeHaemers. Other parties involved in making the loans are named as John Does 1-20.

2. Plaintiff seeks damages under the Indiana Uniform Consumer Credit Code (Count I) and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO) (Counts II-III).

1

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d).

4. This Court has personal jurisdiction over Defendants because they:

   a. Knowingly participated in the making and collection of unlawful loans to Indiana residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

   b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Indiana.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92

Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7.  Plaintiff Aaron Walton is a resident of Fountain City, Wayne County, Indiana.

### Defendants

8.  Defendant Uprova Credit LLC is an online lender that offers loans to consumers at annual percentage rates in excess of 300% via the website www.uprova.com. Uprova Credit LLC purports to be "a tribal lending entity wholly owned and operated by the Habematolel Pomo of Upper Lake, California" ("Tribe"). It uses the address 635 E. State Highway 20, U, Upper Lake, CA 95485-8705.

9.  Defendant Uprova Holdings LLC is a limited liability company, chartered by the Habematolel Pomo of Upper Lake, California, that uses the addresses (a) 635 E. State Highway 20, U, Upper Lake, CA 95485-8705 and (b) 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. Actual business operations are conducted at the Overland Park address. It provides services to Uprova Credit LLC necessary for it to conduct an internet lending business, such as marketing.

10. Defendant Upper Lake Processing Services, Inc. is a corporation chartered by the Habematolel Pomo of Upper Lake, California. It provides support and processing services to Uprova Credit LLC and other online lenders, necessary for them to conduct internet lending businesses. The services performed for the lenders include customer verification, customer service, call center operations, and collections services. Many of these services, such as collections services and customer service, are performed as agent of the lender. Defendant Upper Lake Processing Services, Inc. uses the address 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365.

11. Defendant Pomo One Marketing Inc. is a corporation chartered by the Habematolel Pomo of Upper Lake, California. It provides lead generation for www.uprova.com. It uses the address 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. It sometimes does business as

"Arrowshade."

12.     Defendant Habemco LLC is a limited liability company chartered by the Habematolel Pomo of Upper Lake, California. It uses the addresses (a) 7201 W. 110th St., Fl. 2, Overland Park, KS 66210-2373, (b) 11605 Haynes Bridge Rd., Alpharetta, GA 30009-8669, and (c) 635 E. State Highway 20, Upper Lake, CA 95485-8793. Its registered agent is Michael W. Pearson, 3600 American River Drive, Suite 135, Sacramento, CA 95864. Habemco LLC is also involved in the operation of the www.uprova.com lending enterprise.

13.     Defendant Genel Ilyasova is Vice President of Partner Relations for Pomo One Marketing. On information and belief, the "partners" are the lenders such as Uprova. On information and belief, she is not a member of the Tribe. She may be found at 3498 Troy Drive, Los Angeles, California 90068.

14.     Defendant Sarah Marie Himmler is a managing agent of Uprova Holdings LLC. On information and belief, she is responsible for the content of the www.uprova.com website. She also prepares content for the Pomo One Marketing website. She holds the title of Manager, Digital Content & Front End Developer. On information and belief, she is not a member of the Tribe. She may be found at 7 Georgetown Dr., Apt. 10, Framingham, MA 01702-7538.

15.     Defendant Michael Scott Hammer is an attorney and chief compliance officer at Habemco LLC. He also works for Upper Lake Processing Services Inc. On information and belief, he is responsible for determining where loans made through the www.uprova.com website are made. He may be found at 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. On information and belief, he is not a member of the Tribe.

16.     Defendant Denise DeHaemers is Legal Department Operations Manager at Habemco LLC. She may be found at 7201 W. 110th St., Overland Park, KS 66210-2373. On information and belief, she is not a member of the Tribe.

17.     Defendant David Stover is vice president in charge of Call Center Operations for Upper Lake Processing Services, Inc. He has been employed by Upper Lake Processing Services,

Inc., since about 2013. He may be found at 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. On information and belief, his responsibilities include customer verification, customer service, and collections services. On information and belief, he is not a member of the Tribe.

18. Defendants Genel Ilyasova, Michael Scott Hammer, Sarah Marie Himmler, David Stover and Denise DeHaemers are hereinafter referred to as the "individual Defendants."

19. Defendants John Does 1-20 are other entities and individuals involved in the lending activities complained of.

20. The Tribe has fewer than 200 members.

21. Most of the persons who are operating the lending operation conducted via www.uprova.com are not members of the Tribe.

22. www.uprova.com and the companies and individuals responsible for the business conducted through it do business in Indiana over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

23. Defendants sought out Indiana residents for such loans.

## FACTS RELATING TO PLAINTIFF AARON WALTON

24. On or about October 5, 2022, Plaintiff Aaron Walton obtained a loan via www.uprova.com (Exhibit A). The loan had an amount financed of $1,100 and an annual percentage rate of 335.43%.

25. Plaintiff made payments on the loan, including interest.

26. Defendants claim that amounts are still outstanding.

27. Exhibit A is written on a standard form loan agreement used by Defendants on a regular basis.

28. Defendants regularly make loans to individuals in Indiana at such rates.

29. Defendants will not make loans in certain states. Indiana is not one of these states. Defendants thus seek business from Indiana consumers.

30. The loan was obtained for personal, family or household purposes and not for

5

business purposes.

## INDIANA REGULATION OF LENDING

31. The Indiana Uniform Consumer Credit Code establishes a maximum loan finance charge of 36% per annum for consumer loans.

32. Ind. Code § 24-4.5-3-201, dealing with loans other than supervised loans, provides:

> (1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

33. With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-508, provides:

> Loan finance charge for supervised loans.
>
> (1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
>
> (2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:
>
>> (a) the total of:
>>
>>> (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;
>>>
>>> (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and
>>>
>>> (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or
>>
>> (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

34. There is also a provision for small loans, Ind. Code § 24-4.5-7-101 but the loans authorized are smaller than those made by Uprova Credit, and require a license from the Indiana

Department of Financial Institutions, which Defendants do not have.

35. The amount of finance charge provided for in <u>Exhibit A</u> greatly exceeds that permitted in Indiana on either unsupervised or supervised loans.

36. Ind. Code § 24-4.5-1-201, "Territorial application," provides:

(1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .

    (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.

    (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.

    (e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.

    (f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.

For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

    (a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and

    (b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

>    (6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:
>
>    >    (a) An agreement that the law of another state shall apply.
>
>    >    (b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.
>
>    >    (c) An agreement that fixes venue. . . .

37. Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

>    . . . (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and ***if the debtor has paid an excess charge the debtor has a right to a refund***. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.
>
>    (4) ***If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.*** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .
>
>    (7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.
>
>    (8) In any case in which it is found that a creditor has violated this Article, the court may award ***reasonable attorney's fees*** incurred by the debtor. . . . (Emphasis added)

38. Defendants are aware through prior litigation that their lending operations are illegal.

8

## SOVEREIGN IMMUNITY AS A DEFENSE TO STATE USURY LAWS

39. An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

40. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

41. An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

42. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

43. Where, as here, non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

44. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people

would know that collecting unlawful debt is unlawful").

45. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

46. Plaintiff incorporates paragraphs 1-45.

47. Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff is entitled to an amount equal to the greater of (a) the finance charge or (b) ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

48. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

49. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of "Uprova Credit" at more than 36% interest (all of its loans qualify) (c) where the last scheduled payment on the loan was on or after a date one year prior to the filing of this action.

50. Plaintiff may alter the class definition to conform to developments in the case and discovery.

51. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

52. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant

common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

53. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

54. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

55. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i. Statutory damages;

   ii. Attorney's fees, expenses and costs; and

   iii. Such other or further relief as is appropriate.

## COUNT II – RICO

56. Plaintiff incorporates paragraphs 1-45.

57. This claim is against the individual Defendants, who are the RICO "persons."

58. All loans made in the name of Uprova Credit LLC to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

59. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

60. Uprova Credit LLC, is an enterprise affecting interstate commerce, in that it is a legal entity located outside of Indiana and makes loans to Indiana residents via the Internet.

61. Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC are also enterprises affecting interstate commerce, in that each is a legal entity located outside

of Indiana and is responsible for making loans to Indiana residents via the Internet.

62. Each of the individual Defendants is associated with each of the enterprises listed above.

63. The individual Defendants conducted or participated in the conduct of the affairs of each enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

64. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

65. Plaintiff brings this claim on behalf of a class.

66. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of Uprova Credit LLC, at more than 72% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

67. Plaintiff may alter the class definition to conform to developments in the case and discovery.

68. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

69. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether Uprova Credit LLC, is an "enterprise."

    c. Whether Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC are each enterprises;

    d. Whether each individual Defendant is associated with one or more of the enterprises listed above.

   e. Whether each individual Defendant conducted or participated in the affairs of such enterprises through a pattern of making and collecting unlawful loans.

70. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

71. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

72. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against the individual Defendants for:

   i. Treble damages;

   ii. Attorney's fees, litigation expenses and costs of suit; and

   iii. Such other or further relief as the Court deems proper.

## COUNT III – RICO

73. Plaintiff incorporates paragraphs 1-45.

74. This claim is against the individual Defendants, who are the RICO "persons."

75. All loans made in the name of Uprova Credit LLC to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

76. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

77. There exists an association in fact enterprise consisting of Uprova Credit LLC, Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC. These business of the enterprise is to make loans to Indiana residents and others via the Internet. Each of

the entities that is part of enterprise is located outside of Indiana.

78. Each of the individual Defendants is associated with the enterprise.

79. The individual Defendants conducted or participated in the conduct of the affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

80. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

81. Plaintiff brings this claim on behalf of a class.

82. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of Uprova Credit LLC, at more than 72% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

83. Plaintiff may alter the class definition to conform to developments in the case and discovery.

84. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

85. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether there exists an association in fact enterprise consisting of Uprova Credit LLC, Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC.

    c. Whether each individual Defendant is associated with the enterprise.

    d. Whether each individual Defendant conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

86. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

87. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

88. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against the individual Defendants for:

    i. Treble damages;

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other or further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Heather Kolbus (ARDC 6278239)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER**
    **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman