UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON WALTON,<br>on behalf of Plaintiff and the class members<br>described below,<br><br>   Plaintiff,<br><br>v.<br><br>UPROVA CREDIT LLC, UPROVA<br>HOLDINGS LLC, UPPER LAKE<br>PROCESSING SERVICES, INC., POMO ONE<br>MARKETING INC., HABEMCO LLC,<br>GENEL ILYASOVA, MICHAEL SCOTT<br>HAMMER, DENISE DEHAEMERS, SARAH<br>MARIE HIMMLER, DAVID STOVER, and<br>JOHN DOES 1-20,<br><br>   Defendants. | Case 1:23-cv-00520-SEB-TAB |

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION TO COMPEL INDIVIDUAL ARBITRATION**

The Court should compel arbitration and dismiss this lawsuit because Plaintiff Aaron Walton agreed to arbitrate on an individual basis the very claims at issue in the Complaint against Defendants Uprova Credit LLC; Uprova Holdings LLC; Upper Lake Processing Services, Inc.; Pomo One Marketing Inc.; Habemco LLC; Genel Ilyasova; Michael Scott Hammer; Denise Dehaemers; Sarah Marie Himmler; and David Stover (collectively as "Defendants").

**SUMMARY**

Plaintiff's claims rely on the terms of the Consumer Loan and Arbitration Agreement, dated October 6, 2022, between Plaintiff and Defendant Uprova Credit, LLC, attached as Exhibit A to the Complaint. *See* ECF No. 1-1. The Consumer Loan and Arbitration Agreement includes a "**BINDING CONFIDENTIAL ARBITRATION AGREEMENT, CLASS**

**ACTION WAIVER AND JURY TRIAL AGREEMENT**" in which Plaintiff agreed to arbitrate any disputes with Defendant Uprova Credit, LLC regarding the contract through individual arbitration. This includes all claims asserted by Plaintiff against related third parties including Defendant Uprova Credit, LLC's "…direct or indirect parent companies or entities, affiliated entities, vendors, or service providers, and each of their employees, agents, representatives,…officers,…managers,…and other affiliated persons…." *See* Consumer Loan and Arbitration Agreement, ECF No. 1-1, at pp. 7-10. Defendants other than Uprova Credit, LLC are either (i) affiliated entities, vendors or service providers of Uprova Credit, LLC, in that, they are all wholly owned and operated by the Habematolel Pomo of Upper Lake ("Tribe") just as Uprova Credit, LLC is wholly owned and operated by the Tribe, or (ii) "…employees, agents representatives,…officers… managers…[or] other affiliated persons…" of Uprova Credit, LLC's affiliated entities, vendors or service providers, in that, the individuals named as defendants are employed by Habemco, LLC[1] or Upper Lake Processing Services, LLC. *Id.*

Written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Federal Arbitration Act ("FAA") created a "liberal" national policy favoring the enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[C]ourts must place arbitration agreements on an equal footing with other contracts…and enforce them according to their terms…." *Id.* "[A]ny doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "A court must enforce an arbitration clause where (1) there is

---

[1] Although the Complaint identifies them as separate entities, Habemco, LLC is formerly known as Uprova Holdings, LLC. *See* Declaration of Sherry Treppa, attached hereto as Exhibit 1.

a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022). A matter subject to arbitration should be dismissed under the *forum non conveniens* doctrine. *Id.* at 701.

This is at least the fourth case that Plaintiff's attorneys have filed in this district since February 2023, in which they attack the validity of tribal loans. *See Kearby v. Eagle Lending, LLC, et al.*, Case No. 1:23-cv-00472-JRS-KMB (filed Mar. 16, 2023); *Conlin v. Layma, LLC, et al.*, Case No. 1:23-cv-00377-TWP-MKK (filed Mar. 3, 2023); *Dake v. Chao, et al.*, Case No. 1:23-cv-00203-RLY-MKK (filed Feb. 1, 2023). Notably, the other cases pursue a "rent-a-tribe" theory by contending that the lenders are non-tribal owned businesses that pay revenues to tribes (Kashia Band of Pomo Indians of the Stewarts Point Rancheria, Big Valley Band of Pomo Indians of the Big Valley Rancheria, and Menominee Tribe of Wisconsin) in exchange for use of the tribes' names. *Id.* Plaintiff does not (nor could he) contend such a scheme here where the lender at issue is owned and operated by the Habematolel Pomo of Upper Lake, a federally recognized Native American Indian Tribe. The Complaint instead contends joint liability of the Defendants with respect to the Consumer Loan and Arbitration Agreement by opposing application of tribal sovereign immunity on the alleged basis that "*Most* of the persons who are operating the lending operation" at issue are not members of the Tribe. ECF No. 1, at ¶ 21 (emphasis added). While Plaintiff asserts an erroneous challenge to the Defendants' tribal sovereign immunity, there is no challenge in the Complaint to the formation of a contract or its inclusion of an arbitration provision. The Complaint's challenge to application of tribal sovereign immunity which serves as the basis for the entire lawsuit is for an arbitrator to resolve.

Because there is no genuine dispute that the claims in the Complaint fall within the scope of an agreement to arbitrate on an individual basis, the Court should dismiss this case and compel individual arbitration.

## ARGUMENT

**I.   The parties formed a valid agreement to arbitrate.**

The formation and existence of the Consumer Loan and Arbitration Agreement is established by the pleadings. *See* Complaint, ECF No. 1, at ¶ 24 ("On or about October 5, 2022, Plaintiff Aaron Walton obtained a loan via www.uprova.com (Exhibit A);" ¶ 27 ("Exhibit A is written on a standard form loan agreement used by Defendants on a regular basis"). The Complaint—which contends unlawful interest in the terms of the loan—relies on the formation and existence of the Consumer Loan and Arbitration Agreement which is attached as Exhibit A to the Complaint. *Id. See also* ECF No. 1-1.

Plaintiff is therefore equitably estopped from challenging the existence of the Consumer Loan and Arbitration Agreement. *See Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (holding that the plaintiff was equitably estopped from repudiating an arbitration provision in the contract at issue because "(plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage"). *See also Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1175 (N.D. Ill. 2014) (compelling arbitration in a similar context by observing that "it is difficult to imagine how [plaintiff] could proceed without the Loan Documents, since they are the sole basis for her claim that the 2012 and 2013 Loans were usurious").

Nonetheless, the Consumer Loan and Arbitration Agreement, attached as Exhibit A to the Complaint, is authenticated and accurate. *See* Declaration of Sherry Treppa, attached hereto as

Exhibit 1. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011) (holding that a court may consider evidence outside the pleadings in evaluating a motion seeking to compel arbitration).

The Consumer Loan and Arbitration Agreement contains an agreement to arbitrate. It provides in relevant part:

> SPECIAL NOTICES:
> - THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT THAT AFFECTS YOUR LEGAL RIGHTS. PLEASE READ IT CAREFULLY.

Consumer Loan and Arbitration Agreement, ECF No. 1-1, at p. 2. It continues with the relevant substantive provisions:

> **11.   GOVERNING LAW:** You agree that this Agreement and all aspects of your loan and your relationship with us including all claims or causes of action (contract, tort, equity, statutory or otherwise) shall be subject to, and governed by and enforced in accordance with the laws of the Tribe and applicable U.S. federal law (collectively, the "Governing Law"). By agreeing to this governing law provision, you acknowledge and agree that the laws of the Tribe rather than the laws of your state or any other state will apply. Nothing in this Loan Agreement shall be interpreted to (i) waive any rights you have under U.S. federal law or (ii) prevent you from bringing any individual Claim against us under U.S. federal law, subject to the Arbitration Agreement's prohibition of a jury trial, class actions, class arbitration, and injunctive relief in favor of non-parties.
>
> \*\*\*
>
> **24. DISPUTES**. We both agree that any disputes regarding this Agreement will be decided pursuant to the terms set forth in the Binding Confidential Arbitration Agreement, Class Action Waiver and Jury Trial Agreement below (the "Arbitration Agreement") unless you timely opt out of such process as set forth below.
>
> **BINDING CONFIDENTIAL ARBITRATION AGREEMENT, CLASS ACTION WAIVER AND JURY TRIAL AGREEMENT.**
>
> \*\*\*
>
> **Agreement to Arbitrate.** You and we agree to arbitrate all disputes and claims through confidential binding individual arbitration, including all

claims regarding the validity, scope, or enforceability of this Arbitration Agreement.

**What Rights You are Waiving.** Since both you and we agree that we will resolve all disputes through individual arbitration, (a) WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL; and (b) ALL DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU AND WE ARE WAIVING THE ABILITY TO SERVE AS A PRIVATE ATTORNEY GENERAL OR BRING A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING (the "Class Action Waiver")

**What is Covered.** All claims asserted by us against you or your heirs, successors, representatives, or assignees. All claims asserted by you against us and/or any of our direct or indirect parent companies or entities, affiliated entities, vendors, or service providers, and each of their employees, agents, representatives, directors, officers, shareholders, governors, managers, members, and other affiliated persons (hereinafter collectively referred to as "related third parties"), including, without limitation, claims for money damages and/or equitable or injunctive relief.

**Who is Covered.** This Arbitration Agreement, in addition to us and you, covers our and your heirs, successors, representatives, and assigns, and our related third parties.

**What Law Applies to This Arbitration Agreement.** This Arbitration Agreement involves interstate commerce. It shall be governed by and subject to the FAA for all purposes. The Arbitrator shall decide all issues arising under or relating to the Loan Agreement, as described above, including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement, in accordance with the Governing Law.

*Id.*, at pp. 5, 7-8. The Consumer Loan and Arbitration Agreement concludes with the following:

**By electronically signing this Agreement below,** you certify that the information given in connection with this Agreement is true and correct. You authorize us to verify the information given in connection with this Agreement, and you give us consent to obtain information about you from consumer reporting agencies or other sources. **You acknowledge, represent and warrant that: (a) you have read, understand, and agree to all of the terms and conditions of this Agreement, including the Arbitration Agreement, and the Class Action Waiver, (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made, (c) you have reviewed and been given the option to print or retain a copy of this Agreement**

>             **before you signed it, as well as our privacy policy, and (d) you have
>             the ability to print or retain a completed copy of this Agreement.**

*Id.* at p. 10.  The existence of an agreement to arbitrate cannot be disputed.

This agreement to arbitrate extends to all Defendants.  The Consumer Loan and Arbitration Agreement expressly identifies Defendant Uprova Credit, LLC as a party.  *Id.* at p. 3. But it extends to all claims asserted by Plaintiff against Defendant Uprova Credit, LLC or its "direct or indirect parent companies or entities, affiliated entities, vendors, or service providers, and each of their employees, agents, representatives, directors, officers, shareholders, governors, managers, members, and other affiliated persons (hereinafter collectively referred to as "related third parties"), including, without limitation, claims for money damages and/or equitable or injunctive relief."  *Id.* at pp. 7-8.  It further expressly provides "**Who is Covered.**  This Arbitration Agreement, in addition to us and you, covers our and your heirs, successors, representatives, and assigns, and our related third parties."  *Id.*

This language encompasses all the remaining Defendants.  The Complaint contends that the remaining Defendants are service providers and employees or agents of service providers to Defendant Uprova Credit, LLC—allegations that meet the definition of "related third parties" under the Consumer Loan and Arbitration Agreement.  *See* Complaint, ECF 1, at ¶ 9 (alleging that Defendant Uprova Holdings LLC "provides services to Uprova Credit LLC necessary for it to conduct an internet lending business"); ¶ 10 (alleging that Defendant Upper Lake Processing Services, Inc. "provides support and processing services to Uprova Credit, LLC, and other online lenders, necessary for them to conduct internet lending businesses"); ¶ 11 (alleging that Defendant Pomo One Marketing Inc. "provides lead generation for www.uprova.com"); ¶ 12 (alleging that Defendant Habemco LLC "is also involved in the operation of the www.uprova.com lending enterprise"); ¶ 13 (alleging that Defendant Genel Ilyasova is the Vice

7

President of Partner Relations for Pomo One Marketing"); ¶ 14 (alleging that Defendant Sarah Marie Himmler "is a managing agent of Uprova Holdings LLC" and that "she is responsible for the content of the www.uprova.com website"); ¶ 15 (alleging that Defendant Michael Scott Hammer "is an attorney and chief compliance officer at Habemco LLC" and that "he is responsible for determining where loans made through the www.uprova.com website are made"); ¶ 16 (alleging that Defendant Denise DeHaemers is "Legal Department Operations Manager at Habemco LLC"); ¶ 17 (alleging that Defendant David Stover "is vice president in charge of Call Center Operations for Upper Lake Processing Services, Inc.").

Regardless, Plaintiff is equitably estopped from opposing arbitration with all Defendants because the Defendants' alleged misconduct is premised on the terms of the Consumer Loan and Arbitration Agreement. *Hughes Masonry Co.*, 659 F.2d at 839; *Achey*, 64 F. Supp. 3d at 1177-78. Plaintiff seeks joint relief against all Defendants and alleges a common controversy between Plaintiff and all Defendants with respect to the Consumer Loan and Arbitration Agreement. *See, e.g.,* Complaint, ECF No. 1, at ¶¶ 52, 60-62, and 77-78. These allegations as well as those discussed above demonstrate an obvious and close nexus between the parties and that the claims against the Defendants are closely intertwined with the Consumer Loan and Arbitration Agreement. *See Mines v. Galaxy Int'l Purchasing, LLC*, No. 117CV04746RLYDLP, 2019 WL 1318277, at *10 (S.D. Ind. Mar. 6, 2019), *report and recommendation adopted*, No. 117CV04746RLYDLP, 2019 WL 1317622 (S.D. Ind. Mar. 22, 2019) (applying equitable estoppel to enforce arbitration agreement with non-signatory to agreement). *See also Achey*, 64 F. Supp. 3d at 1178 (compelling arbitration with non-signatory servicer of payday lender because "it is enough that [plaintiff's] claims rely on the common allegation that the terms of those agreements were illegal"); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713

F. Supp. 2d 734, 745 (N.D. Ill. 2010) (compelling arbitration of RICO claims with non-signatories to arbitration agreement because "[a] non-signatory to an agreement to arbitrate can compel arbitration when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration").

Accordingly, the Court should rule that an agreement to arbitrate exists between the parties.

## II.     The claims in the Complaint fall within the scope of the agreement to arbitrate.

The Court should compel arbitration because the Consumer Loan and Arbitration Agreement delegates the question of arbitrability to the arbitrator, but in any event, the claims in this case are disputes regarding the Consumer Loan and Arbitration Agreement.

Parties may agree to arbitrate threshold issues including "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). Parties may also delegate the issue of arbitrability to the arbitrator by incorporating the rules and procedures of the American Arbitration Association and JAMS. *See Gilman v. Walters*, 61 F. Supp. 3d 794, 801 (S.D. Ind. 2014) ("Having carefully reviewed the applicable cases, we are persuaded by the majority view and thus hold that the arbitration provision's incorporation of the AAA Rules is a clear and unmistakable expression of intent by the contracting parties to leave the question of arbitrability to an arbitrator"). *See also Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) ("the 'consensus view' in this district accords with the consensus among the federal courts of appeals: incorporating the AAA's rules, or similar rules, into a contract clearly and unmistakably delegates arbitrability to the arbitrator"). When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those

9

circumstances, a court possesses no power to decide the arbitrability issue. "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019).

The Consumer Loan and Arbitration Agreement here delegates questions of arbitrability to the arbitrator by expressly agreeing to arbitrate the validity, scope, and enforceability of the Consumer Loan and Arbitration Agreement:

> **Agreement to Arbitrate.** You and we agree to arbitrate all disputes and claims through confidential binding individual arbitration, including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement.
>
> ***
>
> **What Law Applies to This Arbitration Agreement**…The Arbitrator shall decide all issues arising under or relating to the Loan Agreement, as described above, including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement, in accordance with the Governing Law.

Consumer Loan and Arbitration Agreement, ECF No. 1-1, at p. 7-8.

The Consumer Loan and Arbitration Agreement further delegates questions of arbitrability to the arbitrator by incorporating the procedures of AAA and JAMS:

> **Starting the Arbitration Process.** If either party or a related party has exhausted informal options in resolving a dispute or claim, that party may send the other party by certified mail a written notice to commence Arbitration. The written notice must describe all claims and the relief requested. Regardless of who demands arbitration, you have the right to choose between the American Arbitration Association (1-800-778-7879) or http://www.adr.org; or JAMS (1-800-352-5267) or http://www.jamsadr.com, to administer the arbitration….
>
> ***
>
> **Procedural Rules.** The arbitration will proceed according to the rules and procedures used by the applicable arbitration organization for consumer

> disputes, to the extent those rules and procedures do not contradict the express terms of this Arbitration Agreement. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

Consumer Loan and Arbitration Agreement, ECF No. 1-1, at pp. 8-9.  These rules and procedures include delegation of arbitrability to the arbitrator.  *See* Rule 14, AAA, Consumer Arbitration Rules, *available at* https://adr.org/consumer; Rule 11(b), JAMS, Comprehensive Arbitration Rules & Procedures, *available at* https://www.jamsadr.com/rules-comprehensive-arbitration/. (last visited on May 16, 2023).

Because the Consumer Loan and Arbitration Agreement delegates questions of arbitrability to the arbitrator—expressly and by incorporation of the rules and procedures of AAA and JAMS—the Court should rule that the parties here delegated the issue of arbitrability to the arbitrator.

Moreover, the liberal policy favoring arbitration creates a presumption of arbitrability. *Gore*, 666 F.3d 1027 at 1034.  Any doubts concerning the scope of the agreement must be construed in favor of arbitration.  *Id.* at 1032.  "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.* at 1032 (internal quotation omitted).

Here, paragraph 24 (ECF No. 1-1, at p. 7) requires arbitration of "any disputes regarding" the Consumer Loan and Arbitration Agreement.  Each Count in the Complaint expressly challenges the enforceability of the terms of the Consumer Loan and Arbitration Agreement. *See, e.g.,* Complaint, ECF No. 1, at ¶¶ 47, 58, 75.  The Complaint therefore is a dispute regarding the Consumer Loan and Arbitration Agreement.  Plaintiff cannot demonstrate "with positive

assurance" that the claims in the Complaint do not fall within the scope of the Consumer Loan and Arbitration Agreement.

Accordingly, the Court should rule that the parties delegated all questions of arbitrability to the arbitrator and/or that the Consumer Loan and Arbitration Agreement encompasses the claims in the Complaint.

### III.   The Court should compel individual arbitration.

The Court should compel individual arbitration consistent with the class action waiver in the Consumer Loan and Arbitration Agreement which clearly and conspicuously waives class proceedings and class arbitration: "(b) ALL DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU AND WE ARE WAIVING THE ABILITY TO SERVE AS A PRIVATE ATTORNEY GENERAL OR BRING A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING (the "Class Action Waiver")." ECF No. 1-1, at p. 7.

The Consumer Loan and Arbitration Agreement should be enforced according to its terms which includes the waiver of class arbitration. *See Kaba v. Aerotek, Inc.*, No. 123CV00084JMSTAB, 2023 WL 2787958, at *2 (S.D. Ind. Apr. 4, 2023) (enforcing class action waiver in arbitration agreement). *See also Huser v. Midland Funding, LLC*, No. 17-CV-04490, 2019 WL 4393017, at *7 (N.D. Ill. Sept. 13, 2019) ("Arbitration clauses waiving the right to proceed on a class-wide basis must be enforced according to their terms; the FAA does not permit courts to invalidate arbitration agreements because they preclude class-wide arbitration of a federal law claim").

The Court should compel individual arbitration as a result.

## IV.   Dismissal is proper.

Because all the claims in the Complaint are arbitrable, dismissal is proper.  The Seventh Circuit held that the proper procedural mechanism for compelling arbitration is pursuant to the *forum non conveniens* doctrine.  *Rock Hemp Corp.*, 51 F.4th at 701.  In doing so, it affirmed the district court's dismissal as the remedy for compelling arbitration.  *Id.   See also Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) ("The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice").  "[M]any courts have recognized that a district court, in its discretion, may dismiss an action where it is clear that, after arbitration has concluded, no claims will remain for the court to resolve.  *Int'l Bhd. of Elec. Workers, Loc. 1393 v. Carroll White Rural Elec. Membership Corp.*, No. 1:20-CV-1689-JMS-TAB, 2020 WL 5544021, at *9 (S.D. Ind. Sept. 16, 2020).  *Accord Stonegate Ins. Co. v. Fletcher Reinsurance Co.*, No. 21 CV 3523, 2021 WL 5769528, at *2 (N.D. Ill. Dec. 6, 2021) ("several circuits have found that there is a judicially-created exception to [this] general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration") (internal quotation omitted).  Dismissal is therefore proper here.

Date:  May 19, 2023                                    Respectfully submitted,

                                                          */s/ Paul Croker*
Offer Korin [Atty No. 14014-49]
Brooke Smith [Atty No. 32427-03]
STOLL KEENON OGDEN PLLC
334 N. Senate Avenue
Indianapolis, IN 46204
Office (317) 464-1100; Fax (317) 464-1111
offer.korin@skofirm.com
brooke.smith@skofirm.com

Paul Croker [admitted PHV]
ARMSTRONG TEASDALE
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
Phone: 816-221-3420; Fax: 816-221-0786
pcroker@atllp.com

*Counsel for Defendants, Uprova Credit, LLC, Uprova Holdings, LLC, Upper Lakes Processing Services, Inc., Pomo One Marketing, Inc., HABEMCO, LLC, Genel Ilyasova, Michael Scott Hammer, Denise DeHaemers, Sarah Marie Himmler, David Stover*

**CERTIFICATE OF SERVICE**

   I hereby certify that on **May 19, 2023**, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's ECF. Parties may access this filing through the Court's system:

| | |
|---|---|
| Daniel A. Edelman | courtecl@edcombs.com |
| Heather A. Kolbus | hkolbus@edcombs.com |
| Matthew J. Goldstein | mgoldstein@edcombs.com |
| EDELMAN COMBS LATTURNER & GOODWIN LLC | |
| *Counsel for Plaintiff* | |

*/s/ Paul Croker*
Paul Croker