# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON WALTON, )<br>on behalf of Plaintiff and the class members )<br>described below, )<br>　　　　　　　　　　　　　　　　　　　　　　) <br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　　　　　　)<br>　　vs. )<br>　　　　　　　　　　　　　　　　　　　　　　)<br>UPROVA CREDIT LLC; )<br>UPROVA HOLDINGS LLC; )<br>UPPER LAKE PROCESSING SERVICES, INC.; )<br>POMO ONE MARKETING INC.; )<br>HABEMCO LLC; )<br>GENEL ILYASOVA; )<br>MICHAEL SCOTT HAMMER; )<br>DENISE DEHAEMERS; )<br>SARAH MARIE HIMMLER; )<br>DAVID STOVER; )<br>and JOHN DOES 1-20, )<br>　　　　　　　　　　　　　　　　　　　　　　)<br>　　　　Defendants. ) | Case No.: 1:23-cv-00520-SEB-TAB<br><br>Judge Sarah Evans Barker<br>Magistrate Judge Tim A. Baker |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO COMPEL ARBITRATION</u>**

Daniel A. Edelman
Heather Kolbus
Matthew J. Goldstein
EDELMAN, COMBS, LATTURNER
　　& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

**I.     INTRODUCTION**

This case concerns a series of predatory and unlawful loans made to Aaron Walton ("Plaintiff"), an Indianapolis resident, via the website www.uprova.com. Mr. Walton is one of thousands of Indiana residents to whom Defendants Uprova Credit, LLC, Uprova Holdings, LLC, Upper Lake Processing Services, Inc., Pomo One Marketing Inc., Habemco LLC, Genel Ilyasova, Michael Scott Hammer, Denise Dehaemers, Sarah Marie Himmler, and David Stover ("Defendants") have made similar loans. All of the loans at issue are usurious under Indiana law.

The illegal loans—with interest rates often exceeding 600%—are made in the name of Uprova Credit, LLC which purports to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the purported "tribal" lending entity is a facade for the illegal lending scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe. Over the last decade, "[c]ourts across the country have confronted" these "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).

The arbitration agreement Defendants seek to enforce requires the application of the law of an Indian tribe that has no substantive jurisdiction over the matter. A tribe's substantive jurisdiction to enact laws is essentially coterminous with its adjudicative jurisdiction and does not extend to dealings between non-Indians off the reservation. *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 329 (2008); *Montana v. United States*, 450 U.S. 544 (1981); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014); *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 115 (2d Cir. 2014). The persons responsible for making the loans—Genel Ilyasova, Michael Scott Hammer, Denise Dehaemers, Sarah Marie Himmler, and David Stover—are

1

not Native Americans, much less members of the Habematolel Pomo of Upper Lake Tribe (the "Tribe").

Against this backdrop, Defendants invoke an arbitration provision that applies tribal law—to the express exclusion of all state law—to a transaction where the tribal interest is a fraud. The construction is flawed, though, as the effect of preventing a party from exercising or vindicating statutory rights and remedies renders unenforceable both the arbitration agreement and delegation provision, both of which Plaintiff challenges. An arbitration agreement that expressly disclaims state law and prevents the effective vindication of federal statutory rights and remedies is simply unenforceable. Defendants' motion to compel arbitration should be denied.

## II. SUMMARY OF THE ARGUMENT

First, the delegation provision is unenforceable—and Plaintiff specifically challenges it—as it places the arbitrator in the impossible position of deciding the validity and enforceability of an arbitration agreement without a body of contract law to draw upon. Accordingly, this Court must determine Plaintiff's challenge to the provision. Second, the arbitration agreement Defendants seek to enforce is unenforceable as matter of law: it provides for the application of tribal law, to the exclusion of all state law, resulting in an impermissible prospective waiver of state and federal statutory rights and remedies. Third, the arbitration agreement is substantively and procedurally unconscionable—among other things, it strips Indiana borrowers of their remedies under Indiana's usury statue and the Racketeer Influenced and Corrupt Organizations Act's ("RICO") "unlawful debt" provision which is predicated on Defendants' collection of usurious debts in violation of state law. The waiver of state and federal rights and remedies violates Indiana public policy and longstanding federal precedent.

**III.     LEGAL STANDARD**

Courts review motions to compel arbitration under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Accordingly, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

**IV.     THE DELEGATION PROVISION IS UNENFORCABLE**

It is axiomatic that "[a] federal court has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982); *see also Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) ("a court first must examine whether, as a matter of law, the 'choice-of-forum and choice-of-law clauses operate in tandem as a prospective waiver of a party's right to pursue statutory remedies.'") (*quoting Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19).

While parties may delegate gateway questions of arbitrability, a "party may contest the enforceability of the delegation clause with the same arguments it employs to contest the enforceability of the overall arbitration agreement. *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021) (citing *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291-292 (4th Cir. 2020)); *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018).

"[I]f a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). Plaintiff specifically challenges the enforceability of the delegation provision—as well as the arbitration agreement as a whole—because it disclaims state contract law and as a prospective waiver of his right to vindicate his federal and state statutory rights and remedies. The issue of arbitrability is therefore for this Court to decide.

3

### A. An Arbitration Agreement that Disclaims State Law is Unenforceable.

The Supreme Court has made clear that an arbitration clause depends on state law for its validity and that the only effect of the Federal Arbitration Act ("FAA") is to prohibit states from discriminating against arbitration. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022); *see also Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 631 (2009) (state law is applicable to determine which contracts are binding under § 2 and enforceable under § 3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally).

The validity and enforceability of any arbitration clause must be determined "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "grounds as exist" to determine contract formation, validity and contract defenses are creatures of state law. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally. . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Accordingly, state contract law must be applied to determine the enforceability of an arbitration clause. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (effect of FAA Section § 2 is to preserve generally applicable state law contract defenses); *Morgan*, 142 S. Ct. at 1713.

### B. The Arbitration Agreement Waives State and Federal Statutory Rights and Remedies.

The arbitration agreement Defendants seek to enforce disclaims federal and state law in favor of the law of a tribe which lacks legislative and adjudicative authority to regulate the transaction. The loan agreement's Governing Law provision confirms that tribal law shall apply to a dispute:

> **11. GOVERNING LAW:** You agree that this Agreement and all aspects of your loan and your relationship with us including all claims or causes of action (contract, tort, equity, statutory or otherwise) shall be subject to, and governed by and enforced in accordance with the laws of the Tribe and applicable U.S. federal law (collectively, the "Governing Law"). By agreeing to this governing law provision, you acknowledge and agree that the laws of the

>Tribe **rather than the laws of your state or any other state will apply**. Nothing in this Loan Agreement shall be interpreted to (i) waive any rights you have under U.S. federal law or (ii) prevent you from bringing any individual Claim against us under U.S. federal law, subject to the Arbitration Agreement's prohibition of a jury trial, class actions, class arbitration, and injunctive relief in favor of non-parties. (Dkt. 1-1, p. 5) (emphasis added).

The arbitration provision provides that an arbitrator shall resolve disputes "in accordance with the Governing Law." *Id.* at 8.

The arbitration agreement thus expressly disclaims state law. The waiver of state law deprives the arbitrator from accessing the body of law necessary to determine arbitrability. The Fourth Circuit has affirmed a ruling that a ban on state law in a tribal loan contract rendered both the arbitration clause and the delegation clause unenforceable. *See Hengle v. Treppa*, 19 F.4th 324, 339 (4th Cir. 2021), *cert. dismissed sub nom. Asner v. Hengle*, 212 L. Ed. 2d 795, 142 S. Ct. 2093 (2022). In *Hengle*, the loan agreement, as here, expressly disclaimed the application of any state law, but stated that the contract was governed by the FAA. The Fourth Circuit held that the ban on state law was fatal as it prohibited the application of state law defenses mandated by § 2 of the FAA. *Id.* at 340. Reference to the FAA did not save the clause because the mandate in § 2 requires access to state law and the clause prohibited the arbitrator from applying state law. *Id.*

Numerous district courts have reached similar conclusions. *See, e.g., Gibbs v. Stinson*, 421 F. Supp. 3d 267, 291 (E.D. Va. 2019) *aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) ("Defendants' approach would require an arbitrator to determine whether a valid and enforceable arbitration agreement exists absent the federal or state law tools necessary to do so."); *MacDonald v. CashCall, Inc*, 2017 WL 1536427, at *4 (D.N.J. Apr. 28, 2017), *aff'd,* 883 F.3d 220 (3d Cir. 2018) ("[I]f the question of the enforceability of the arbitration clause were sent to an arbitrator, he or she would be categorically prohibited from applying any federal or state law to arrive at an answer."); *Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778, 786 (E.D. Pa. 2016) ("In practical terms, enforcing the delegation provision would place an arbitrator in the impossible position of deciding

5

the enforceability of the agreement *without* authority to apply any applicable federal or state law") (emphasis in original); *Ryan v. Delbert Servs. Corp.*, 5:15 cv 05044, 2016 WL 4702352, at *5 (E.D. Pa. Sept. 8, 2016) ("The wholesale waiver of federal and state law thus dooms both the delegation provision and the arbitration clause, but for different reasons.").

Put differently, "[a] delegation clause that requires an arbitrator to determine whether a valid and enforceable arbitration agreement exists" without access to federal or state laws "necessary to make that determination," is "unenforceable as a violation of public policy." *Hengle*, 19 F.4th at 339.[1] The delegation provision, like the arbitration clause, is unenforceable.

## V.   THE ARBITRATION PROVISION IS UNENFORCEABLE AS IT PROSPECTIVELY WAIVES PLAINTIFF'S STATUTORY RIGHTS AND REMEDIES

The arbitration agreement Defendants seeks to enforce waives all state law, including Plaintiff's statutory rights and remedies under both federal and Indiana law. While the FAA has broad reach, "courts will not enforce a prospective waiver" of statutory rights in *any* contract. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 241 (2013).

In *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.5 (2022), the Supreme Court rejected the argument that the prospective waiver doctrine is limited to a provision waiving substantive rights under federal law. The Supreme Court held that there "is not anything unique about federal statutes" for the application of the prospective waiver doctrine. *Id.* "That is why," the Court added, it had previously considered the application of the doctrine in a case concerning "claims arising under state law." *Id.* (citing *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (enforcing an

---

[1] Defendants do not ask the Court to sever the offending provisions, and for good reason. A tribal arbitration contract's "errant provisions" are not severable as they go to the core of the arbitration agreement—the animating purpose is to "ensure that [the Tribal lender] and its allies could engage in lending and collection practices free from the strictures of any federal law." *Hayes*, 811 F.3d at 666; *see also Dillon*, 856 F.3d at 336; *Rideout*, 2018 WL 1220565, at *7.

6

arbitration agreement because it relinquished "no substantive rights the TAA or other California law may accord him")).

An arbitration agreement is unenforceable, pursuant to the "prospective waiver" doctrine, if it "prospective[ly] waived" a "party's right to pursue statutory remedies." *Mitsubishi Motors*, 473 U.S. at 637 n. 19; *Am. Express Co.*, 570 U.S. at 235 (noting that the prospective waiver/ effective vindication exception "serves to harmonize competing federal policies" by allowing courts to invalidate arbitration agreements that "operate as a waiver of a party's right to pursue statutory remedies.").

The Second, Third, and Fourth Circuit Courts of Appeals, as well as the overwhelming majority of federal district courts, have refused to enforce "arbitration agreements that limit a party's substantive claims to those under tribal law, and hence forbid federal claims from being brought." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020); *see also Hengle v. Treppa*, 19 F.4th 324, 343 (4th Cir. 2021); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 339-45 (4th Cir. 2020) (Agee, Gregory, Motz, JJ. (unanimous)); *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 292-94 (4th Cir. 2020) (unanimous); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 at 333-37 (4th Cir. 2017) (Keenan, Duncan, Thacker, JJ. (unanimous)); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 673-76 (4th Cir. 2016) (Wilkinson, Keenan, Harris, JJ., (unanimous)); *Gingras*, 922 F.3d at 126-128 (2d Cir. 2019) (Hall, Leval, Chin, JJ. (unanimous)); *Smith v. Western Sky Fin., LLC*, 168 F. Supp. 3d 778 (E.D. Pa. 2016); *Hengle v. Asner*, 433 F. Supp. 3d 825 (E.D. Va. 2020); *Titus v. ZestFinance, Inc.*, 18 cv 5373 2018 WL 5084844, at *5 (W.D. Wash. Oct. 18, 2018), *vacated on other grounds by Titus v. BlueChip Fin.*, 786 F. App'x 694 (9th Cir. 2019); *Ryan v. Delbert Servs. Corp.*, 5:15 cv 05044, 2016 WL 4702352, at *4 (E.D. Pa. Sept. 8, 2016); *Rideout v. CashCall, Inc.*, 2:16 cv 02817, 2018 WL 1220565, at *6 (D. Nev. Mar. 7, 2018); *cf. Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021) (enforcing delegation provision because plaintiff failed to challenge it).

7

Here, Plaintiff cannot vindicate his federal statutory rights and remedies under the Indiana IUCCC and RICO as the arbitration agreement Defendants seek to enforce disclaims all state law. Plaintiff's RICO claim (Count II) is brought under the "unlawful debt" provision of 18 U.S.C. § 1962(c). Plaintiff alleges that:

> All loans made in the name of Uprova Credit LLC to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%)….The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6). (Dkt. 1, P. 11).

The arbitration provision operates as a prospective waiver of Plaintiff's federal statutory rights and remedies because the agreement disclaims all state law. State law is the *sine qua non* of a RICO "unlawful debt" claim under 18 U.S.C. § 1962(c) as state law is necessary to establish an unlawful debt. Plaintiff's federal statutory rights under the "unlawful debt" provision of RICO are based on state law, and cannot be vindicated where, as here, state law is disclaimed. The arbitration provision is thus unenforceable as it prevents Plaintiff from vindicating his statutory right and remedies under RICO.[2]

Plaintiff specifically challenges the enforceability of the delegation provision—as well as the arbitration agreement as a whole—as a prospective waiver of his right to vindicate his federal and state statutory rights and remedies. The agreement is unenforceable, and Defendants' motion to compel arbitration should be denied.

---

[2] Defendants' contract disclaims state and federal law, and there is no basis for the application of tribal law, so what law authorizes the arbitration provision? This underscores the fact that the provision simply strings together legal concepts for the improper purpose of depriving the borrower of all rights.

8

## VI. THE ARBITRATION AGREEMENT IS UNENFORCEABLE AS IT IS UNCONSCIONABLE AND THE LOAN AGREEMENT IS VOID UNDER INDIANA LAW

Under Indiana law, a contractual provision may be unconscionable on either procedural or substantive grounds, or a combination of both. *DiMizio v. Romo*, 756 N.E.2d 1018, 1023 (Ind. Ct. App. 2001).

### A. The Arbitration Agreement is Substantively Unconscionable.

The arbitration agreement is substantively unconscionable under Indiana law because it disclaims all rights under state law. Additionally, the selection of tribal law to Plaintiff's claims is unenforceable as it undermines fundamental consumer protection laws of Plaintiff's home state, Indiana—the state with the strongest connection to the agreement.

"[P]arties are free within bounds to use a choice of law clause in an arbitration agreement to select which local law will govern the arbitration," the Fourth Circuit explained in *Hayes*, "[b]ut a party may not underhandedly convert a choice of law clause into a choice of no law clause—it may not flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject." *Hayes*, 811 F.3d at 675.

Count I of Plaintiff's complaint seeks damages under the Indiana Uniform Consumer Credit Code ("IUCCC") which establishes a maximum loan finance charge of 36% per annum for consumer loans made on the Internet to Indiana consumers. Under the Territorial Application Provision, a loan transaction occurs in Indiana "if a consumer who is a resident of Indiana enters into a sale, lease, or loan transaction with a creditor in another state and the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means . . ." Ind. Code Ann. § 24-4.5-1-201(1)(d).

If a creditor or one acting on behalf of a creditor makes loans in violation of the IUCCC, the consumer can recover damages under § 24-4.5-5-202.

9

"The danger that creditors may be able to induce consumers to agree that the applicable law will be that of a creditors' haven that has no effective consumer credit protection has led to invalidating choice of law agreements except where the law chosen is that of the state of the consumer's residence. Subsections (8) and (9)." Ind. Code Ann. § 24-4.5-1 (Comment 1). If a non-Indiana lender that conducts business over the internet could immunize itself from the IUCCC by simply inserting a choice of law clause specifying the law of some jurisdiction that does not protect consumers, the IUCCC would be a dead letter.

The IUCCC clearly states a fundamental public policy of Indiana when it specifies what contracts it applies to. A "choice of law" clause that has the effect of making the IUCCC inapplicable is both a prohibited waiver or evasion of the IUCCC and invalid as contrary to public policy. The IUCCC Territorial Application provision expressly negates the ability of consumers to waive its protections. § 24-4.5-1-201(6). "The following agreements by a…debtor are invalid with respect to…consumer loans, or modifications thereof, to which this article applies: (a) An agreement that the law of another state shall apply. (b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state. (c) An agreement that fixes venue. *Id.*

Here, Defendants were not authorized to make a loan to Mr. Walton period, let alone at an interest rate exceeding 300%. Enforcing such a loan would be contrary to Indiana statue and Indiana public policy forbidding the making of usurious loans. "Indiana generally does not enforce contracts that are 'contrary to public policy.'" *Walton v. Jennings Cmty. Hosp., Inc.*, 875 F.2d 1317, 1323 (7th Cir. 1989) quoting *Kaszuba v. Zientara*, 506 N.E.2d 1, 2 (Ind. 1987).

  **B.**  **The Arbitration Agreement is Procedurally Unconscionable.**

The entire purpose of Defendants' arbitration agreement is to prevent any remedy from being exercised whatsoever by way of evading federal and state law. The agreement is replete with false representations which rise to the level of fraud. For example, there is no basis for the

10

application of tribal law to the underlying transaction. The lending operation is run by non-Indians off the reservation. *Otoe-Missouria.*, 769 F.3d at 115.

### VII. THE CLASS ACTION WAIVER IS PART OF THE ARBITRATION AGREEMENT AND HAS NO INDEPENDENT FORCE

In addition to the arbitration agreement, Defendants invoke the class action waiver in the arbitration provision, suggesting that it has independent effect. However, the class action waiver is part of the arbitration clause. The waiver is premised on the applicability of the arbitration provision. On its face, it cannot be invoked by anyone who is not entitled to require arbitration. Since none of the Defendants have the right to compel arbitration, it has no effect here. Both the claimed arbitration agreement and class action waiver are contrary to public policy and unconscionable, in that they have the effect of exculpating a lender engaged in usury from redress for its conduct.

### VIII. CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration should be denied.

Respectfully submitted,

*/s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
Matthew J. Goldstein
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
hkolbus@edcombs.com
mgoldstein@edcombs.com
Email address for service: courtecl@edcombs.com

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on Tuesday, July 11, 2023, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF online system, which sent notice via email to all counsel of record.

                                                          /s/*Daniel A. Edelman*
                                                          Daniel A. Edelman

Daniel A. Edelman
Heather Holbus
Matthew J. Goldstein
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
hkolbus@edcombs.com
mgoldstein@edcombs.com
Email address for service: courtecl@edcombs.com