IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

AARON WALTON,  )
on behalf of Plaintiff and the class members )
described below, )
  )
      Plaintiff, ) 1:23-cv-00520-SEB-TAB
  )
vs. ) Judge Sarah Evans Barker
  ) Magistrate Judge Tim A. Baker
UPROVA CREDIT LLC; )
UPROVA HOLDINGS LLC; )
UPPER LAKE PROCESSING SERVICES, INC.; )
POMO ONE MARKETING INC.; )
HABEMCO LLC; )
GENEL ILYASOVA; )
MICHAEL SCOTT HAMMER; )
DENISE DEHAEMERS; )
SARAH MARIE HIMMLER; )
DAVID STOVER; )
and JOHN DOES 1-20, )
  )
      Defendants. )

**REPLY IN SUPPORT OF
PLAINTIFF AARON WALTON'S MOTION FOR (A) RECONSIDERATION
OF THE COURT'S ORDER OF MARCH 21, 2024 OR
(B) CERTIFICATION FOR APPEAL UNDER 28 U.S.C. §1292(b).**

Defendants ("Uprova") acknowledges that a motion to reconsider is appropriate where there has been a clear error of law. As set forth below, this is the case here.

## I. *VIKING* DID HOLD THAT AN ARBITRATION CLAUSE CANNOT WAIVE STATE STATUTORY RIGHTS

Uprova does not dispute that examination of the briefs before the Supreme Court in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 n. 5 (2022), reh'g denied, 143 S.Ct. 60 (2022), shows that the Supreme Court was in fact addressing the use of an arbitration clause to negate application of statutory rights under state statutes. That is the "context" of the statement in footnote 5.

Appellee argued that "[t]he FAA [Federal Arbitration Act] does not authorize enforcement of agreements to waive [California state law] PAGA claims any more than it authorizes agreements to waive the rights and remedies made available by those other [federal] statutes" (Initial brief of

1

Appellee-Respondent in *Viking River Cruises, Inc. v. Moriana*, 2022 U.S. S. CT. BRIEFS LEXIS 678, *33-37) In reply, Viking asserted that "While Moriana repeatedly invokes *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), for the supposed rule that 'an arbitration agreement cannot ... waive an entire statutory cause of action,' Resp.Br.19-20, that rule applies only to waivers of 'federal statutory right[s],' not state-law ones. *Italian Colors*, 570 U.S. at 235. When it comes to state efforts to insulate a state law from bilateral arbitration, the FAA and the Supremacy Clause supply the rule of decision." *Viking River Cruises, Inc. v. Moriana*, 2022 U.S. S. CT. BRIEFS LEXIS 878 at *9-10 n. 1. The Supreme Court was of the opinion that an arbitration agreement purporting to waive state law claims was not valid, and stated that what has sometimes been referred to as the "prospective waiver" or "effective vindication" doctrine applies to state statutory rights as well as federal. The Supreme Court is not, of course, obligated to use the terms "prospective waiver" or "effective vindication."

*Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (Response, p. 2), held that arbitration of a claim under the California Talent Agencies Act did not waive any rights because the arbitration agreement before the Court did not purport to require the arbitrator to not apply that Act.

Here, the arbitration agreement does just that. It expressly provides that "The Arbitrator shall decide all issues arising under or relating to the Loan Agreement, as described above, including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement, in accordance with the Governing Law." Paragraph 11 of the arbitration agreement, "GOVERNING LAW," states that "You agree that this Agreement and all aspects of your loan and your relationship with us including all claims or causes of action (contract, tort, equity, statutory or otherwise) shall be subject to, and governed by and enforced in accordance with the laws of the Tribe and applicable U.S. federal law (collectively, the 'Governing Law'). By agreeing to this governing law provision, you acknowledge and agree that the laws of the Tribe rather than the laws of your state or any other state will apply. Nothing in this Loan Agreement shall be interpreted to (I) waive any rights you have under U.S. federal law . . . ." Clearly, the arbitrator is required to not apply the Indiana

Uniform Consumer Credit Code.

## II.  DEFENDANTS' PARADE OF HORRIBLES IS WRONG

Unable to deny the issues presented in the briefs in *Viking*, Defendants instead suggest that "If Plaintiff's position were correct, then no arbitration provision containing a choice of law provision could ever be enforced because any choice of law provision naturally results in a waiver of rights under the laws of some other unselected forum." (Response, p. 2)  This is a strawman argument.  Only waiver of *statutory* rights is at issue.  Furthermore, most statutes do not (a) expressly prescribe their territorial applicability and (b) expressly provide that they may not be waived.

The Indiana Consumer Credit Code is relatively unique in that regard.  Ind. Code §24-4.5-1-201(1) provides that "this article applies to sales, leases, and loans made in this state . . . ."  Ind. Code §24-4.5-1-201(1)(d) states that "a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means."  This precisely describes the business model used by Uprova – offering loans by Internet and electronic means to residents of Indiana.

Ind. Code §24-4.5-1-201(6) provides that "the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:  (a) An agreement that the law of another state shall apply.  (b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.  (c) An agreement that fixes venue."  In short, if the Indiana Uniform Consumer Credit Code applies by its terms to a transaction, an Indiana consumer cannot agree otherwise.

### III. DEFENDANT'S RELIANCE ON *RIVAS* IS MISPLACED

Uprova also cites the unpublished decision in *Rivas v. Coverall N. Am., Inc.*, No. 22-56192, 2024 U.S. App. LEXIS 7478, at *3 (9th Cir. Mar. 29, 2024). *Rivas* dealt with a claim that arbitration was prohibitively expensive, not a claim that an arbitration agreement expressly waived state statutory rights. However, the best evidence of what question the Supreme Court was answering in *Viking* is the record in that case, showing the question presented – whether an arbitration clause can waive state statutory rights.

### IV. EXISTENCE OF LAW AUTHORIZING ARBITRATION AGREEMENT

Plaintiff argued (Doc. 32, p. 9 of 13, PageID #: 368, at n. 2) that "Defendants' contract disclaims state and federal law, and there is no basis for the application of tribal law, so what law authorizes the arbitration provision?" Uprova now asserts that the Tribal Consumer Finance Services Regulatory Ordinance does so. The Ordinance states the loans "shall be subject to a written agreement that . . . contains . . . a clause allowing binding arbitration and which provides consumers the instructions for filing an arbitration claim and does not waive any protections afforded under applicable federal laws."

There are two things wrong with Uprova's assertion. First, a directive to include an arbitration clause in a contract with a non-member of the Tribe is *not* a Tribal law authorizing arbitration. The "law" of a state for choice of law purposes is "the body of standards, principles and rules, exclusive of its rules of Conflict of Laws, which the courts of that state apply in the decision of controversies brought before them." *Restatement 2d of Conflict of Laws*, §4. A tribe is a "state" for these purposes, see *Restatement 2d of Conflict of Laws*, §3, providing that the word "state" denotes "a territorial unit with a distinct general body of law."

A "law" which does not apply to the citizens of the territorial unit that enacts it lacks an essential safeguard of legitimacy – something that the population of the enacting unit must live with. Uprova is in effect arguing that a Tribe can enact a law which only applies to non-members of the Tribe who obtain loans over the Internet. Uprova does not assert that there is any Tribal

4

statute or ordinance corresponding to Ind. Code Ann. §34-57-1-1 et seq., the state arbitration act.

That brings us to the second problem with Uprova's assertion: Uprova does not explain how the Tribe has jurisdiction to enact an ordinance governing contracts made over the Internet with non-members of the Tribe. It does not. An Indian tribe does not have legislative or judicial jurisdiction to prescribe rules of contract law that apply to a contract made over the Internet with a non-member of the tribe residing in another state. *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 115 (2d Cir. 2014); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-79 (7th Cir. 2014); *Harris v. FSST Mgmt. Servs., LLC*, 22cv1063, 2023 U.S. Dist. LEXIS 138601, *21 (N.D. Ill. Aug. 9, 2023) ("the Seventh Circuit in *Jackson v. Payday* held that disputes regarding a tribal lending arrangement did not arise from actions on reservation land and thus the tribe lacked subject matter jurisdiction over plaintiff borrowers. 764 F.3d at 785-86. Here, Defendants have not established a colorable claim of tribal jurisdiction."); *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 329 (2008); *Montana v. United States*, 450 U.S. 544 (1981). This is a matter of subject matter jurisdiction and thus not subject to consent. *Jackson*, 764 F.3d at 783.

A tribal court has no jurisdiction over disputes between non-Indians concerning off reservation conduct, even with their express consent, either given directly or by including a provision in a contract that it is "deemed" to have been made on tribal lands even though the consumer never set foot thereon. *Jackson*, 764 F.3d at 783 ("a nonmember's consent to tribal authority is not sufficient to establish the jurisdiction of a tribal court"). A tribe's substantive jurisdiction to enact laws is coterminous with its adjudicative jurisdiction, and does not allow regulation of dealings between non-Indians off the reservation. *Montana v. United States*, 450 U.S. 544 (1981); *Plains Commerce Bank v. Long Family Land & Cattle Co., supra*, 554 U.S. at 330, 333 ("with only one minor exception [dealing with zoning], we have never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land"); *Jackson*, 764 F.3d at 777-78. Internet lending to non-Indians is considered off-reservation conduct subject to nondiscriminatory state regulation. *Hengle v. Treppa*, 19 F.4th 324, 348-49 (4th Cir. 2021); *Jackson*, 764 F.3d at 782.

In short, by disclaiming state law, Uprova negates application of the only body of law which permits enforcement of either the arbitration clause or the delegation clause.

Uprova claims that Plaintiff did not previously raise this issue (Response, p. 5), but that is wrong. See Doc. 32, p. 2 of 13 PageID #: 361 ("The arbitration agreement Defendants seek to enforce requires the application of the law of an Indian tribe that has no substantive jurisdiction over the matter. A tribe's substantive jurisdiction to enact laws is essentially coterminous with its adjudicative jurisdiction and does not extend to dealings between non-Indians off the reservation.")

## V.     INTERLOCUTORY APPEAL

Uprova asserts that Plaintiff has not identified a controlling issue of law over which there is a substantial difference of opinion. Plaintiff submits that the questions identified in his motion are such. They are not "fact based," and Plaintiff did present them previously.

The only case Uprova cites for the proposition that an interlocutory appeal will not expedite resolution of this matter is *Moglia v. Pacific Emplrs. Ins. Co.*, 547 F.3d 835, 836 (7th Cir. 2008), an unusual case where a bankruptcy court had ordered a trustee to arbitrate and the arbitration had not been commenced five years later. That Uprova cites such an odd case merely underscores that an interlocutory appeal here will expedite matters. Here, the Court's ruling eliminates the possibility of a class action. Plaintiff has the right to challenge that ruling after an arbitration award, *including one in favor of Plaintiff on his individual claims. Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872 (7th Cir. 2012) (possible incentive award to class representative defeats mootness claim). If the arbitration clause is unenforceable, that may as well be finally resolved now.

## VI. CONCLUSION

For the reasons stated in Plaintiff's motion and above, the Court should either (a) reconsider its order of March 21, 2024 or (b) certify it for appeal under 28 U.S.C. §1292(b).

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather A. Kolbus
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## CERTIFICATE OF SERVICE

Daniel A. Edelman certifies that on April 22, 2024, this document was filed via ECF, causing a copy to be served on all counsel of record.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

T:\39078\Pleading\Plaintiff's Reply in Support of motion to reconsider 4-20-24 DAE_Pleading.WPD